WESTBROOKS, J., DISSENTING:
 

 ¶ 41. I respectfully dissent from the majority. At the hearing on March 9, 2015, in evaluating whether the statutory prerequisites for parental-rights termination were met, the county court and majority looked only at the behaviors of CSH during May 2008 through December 2009. After entering an inpatient drug-rehabilitation program
 in January 2010, CSH made substantial progress toward completing her service-agreement requirements. Additionally, CSH experienced many continuances for a hearing, most due to no fault or request of her own. I believe those actions should have been taken into consideration at the 2015 hearing as well.
 

 ¶ 42. The United States Supreme Court, as well as the Supreme Court of Mississippi, has held a long standing tradition of protecting parental rights as fundamental rights. The United States Supreme Court held that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child is protected by the Fourteenth Amendment, and does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State."
 
 Santosky v. Kramer
 
 ,
 
 455 U.S. 745
 
 , 745,
 
 102 S.Ct. 1388
 
 ,
 
 71 L.Ed.2d 599
 
 (1982). Stating even further that, "[a] parental rights termination proceeding interferes with that fundamental liberty interest."
 

 Id.
 

 The Mississippi Supreme Court stated in similar fashion that "[b]ecause parental rights are so important, we sharply limit the circumstances under which can be terminated by the government."
 
 Gunter v. Gray
 
 ,
 
 876 So.2d 315
 
 , 317 (¶ 3) (Miss. 2004).
 

 ¶ 43. The majority holds that the county court was proper in finding three statutory grounds for the termination supported by clear and convincing evidence. I disagree.
 

 ¶ 44. First, the majority states that CSH failed to comply with her service agreement, which prevented the children from being returned to her after more than a year in DHS custody, according to Mississippi Code Annotated section 93-15-103(3)(d)(ii) (Rev. 2013). While that is correct, CSH did complete her service agreement before the hearing. The children's social worker, Barbara Williams, testified in accordance with that fact, agreeing that from 2010 going forward CSH did everything to satisfy her agreement to get her children back, including going to treatment, finding housing, and having the financial means to provide for the children.
 

 ¶ 45. Second, the majority states that CSH's ongoing drug use prevented reunification.
 
 See
 

 id.
 

 § 93-15-103(3)(e)(i). However, CSH completed her treatment at Born Free in Jackson, Mississippi in May 2010 and passed each subsequent drug test between then and the hearing, negating that her drug use was ongoing after treatment.
 

 ¶ 46. Third, the majority states that CSH's failure to eliminate the identified harmful behavior prevented reunification.
 
 See
 

 id.
 

 § 93-15-103(3)(e)(ii). However, as stated, CSH eliminated her drug use and made substantial strides toward completing the service-agreement before the hearing to ensure reunification.
 

 ¶ 47. Additionally, the majority states that the mother-child relationship with Leo and Quinn had substantially eroded.
 
 See
 

 id.
 

 § 93-15-103(3)(f). I agree. Prior to 2015, the county court and DHS only provided CSH one hour a month with her children, totaling twelve hours a year. Twelve hours a year is hardly enough time to build strong bonds, and erosion of the relationship would be a natural result. However, CSH should not have been penalized, as the court and DHS aided in the erosion by not providing her more visitation. Scott Colom, the guardian ad litem in the case, testified that "... of course you can have children regain bonds with parents but this is a unique situation in that they've already got bonds with parents and you expect them to be able to create new bonds with different parents, it's going to be hard, especially considering the circumstances." Although difficult with additional time, the mother-child relationships among CSH, Leo, and Quinn could be mended.
 

 ¶ 48. Furthermore, to address the other statutory grounds found by the county court: CSH showed up for every visitation available to her.
 
 See
 

 id.
 

 § 93-15-103(3)(d)(i). Williams testified that CSH always took advantage of her visitations, even rescheduling when needed. Lastly, the county court should have re-evaluated CSH's behaviors after 2010 and the limitations placed on her by the court in her attempts to reunify with her children.
 
 See
 

 id.
 

 § 93-15-103(3)(h).
 

 ¶ 49. I find that when comprehensively looking at the entire period of time the children have been in DHS custody, the statutory grounds set forth by section 93-15-103(3) were not met. Therefore, CHS's parental rights should not have been terminated.
 

 ¶ 50. I respectfully dissent.
 

 IRVING, P.J., JOINS THIS OPINION.